IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY IKE, JR.,** **#Y37253,** | |
| Plaintiff, | Case No. 24-cv-00569-SPM |
| v. | |
| **BRADLEY T. SADLER,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Larry Ike, an inmate of the Illinois Department of Correction, commenced this lawsuit pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Menard Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE FIRST AMENDED COMPLAINT

Plaintiff states that in January 2022, he was being held in North 2 segregation at Menard Correctional Center. (Doc. 13, p. 6). While in segregation, he and other inmates were being denied access to mental health programs, the ability to go to yard and have out of cell time, and cleaning materials three times a week. The inmates in segregation had been requesting to speak to the cell

house major, the sergeant, and the warden through grievances about their issues, but their requests were not granted. As a result of their mistreatment, on January 12, 2022, Plaintiff and "a couple of individuals" withheld their dietary trays in a form of peaceful protest. Sergeant Royster came to Plaintiff's cell and asked why Plaintiff was withholding his food tray. Plaintiff explained the mistreatment he was experiencing in segregation. Royster responded, "be a man and hold the tray when the tactical team comes, don't be a pussy, staff assaulter." Royster also told Plaintiff that he would "get a well good wooping[sic] in Menard." Correctional Officer Williams then came to the cell and asked for the tray. Plaintiff was placed in handcuffs, the cell was searched, and the tray confiscated. (*Id.*).

A few hours later, the tactical team came to Plaintiff's cell and asked for the tray that Williams had previously retrieved. (Doc. 13, p. 6). Plaintiff was instructed to "cuff up." Plaintiff responded that the correctional officer already came and collected the tray. Lieutenant Bradley Sadler again told Plaintiff to "cuff up." Plaintiff refused. He states that he did "not have to, there was no reason for [Sadler] to come in [his] cell, the tray was gone with the C/O Williams." Sadler then sprayed OC spray into Plaintiff's cell. Sadler entered the cell, "rammed" Plaintiff against the wall, forced Plaintiff down to the floor, and placed Plaintiff in handcuffs. Plaintiff began to hyperventilate and could not breath from the OC spray. (*Id.*).

Plaintiff was then seen by staff members from the medical and mental health departments. (Doc. 13, p. 6). He informed both individuals that he could not breath and that he needed proper decontamination to clean the OC spray off his face and body, but his statements were ignored. Plaintiff was taken back to his cell, which had not been cleaned and was still filled with OC spray. His property had been taken, and he was left "in the cold of winter with nothing to keep [him] warm." The running water to his cell had been turned off by staff, and he was unable to clean the

OC spray from his body or cell. Plaintiff states that he wrote to the mental health and medical departments numerous times, and the correctional officers who walked by his cell did not report his condition to the mental health or medical staff. He alleges that he sat in his cell covered in OC spray for almost a week with breathing complications, chest pain, and burning skin. (*Id.*).

**PRELIMINARY DISMISSALS**

In the First Amended Complaint, Plaintiff does not assert his allegations regarding lack of medical care or the conditions of his confinement following the use of OC spray against any named defendant. Accordingly, any claims Plaintiff is attempting to assert for the events that took place before or after the use of the OC spray by Defendant Sadler are dismissed without prejudice.

**DISCUSSION**

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following count:

**Count 1:** Eighth Amendment against Sadler for the use of excessive force against Plaintiff on January 12, 2022.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Again, Plaintiff's allegations do not state a claim for excessive force against Sadler. "Correctional officers violate the Eighth Amendment when they use force maliciously and sadistically for the very purpose of causing harm, but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). *See also Rice ex rel. Rice v. Correctional Medical*

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

*Servs.,* 675 F.3d 650, 668 (7th Cir. 2012) (use of pepper spray justified when inmate refused to comply with order to step out of cell). By Plaintiff's own admission, he was sprayed with OC spray once, forced to the floor, and handcuffed by Sadler only after he refused two orders directing him to be placed in handcuffs. Plaintiff disobeyed the instructions of the tactical team, and the "spray was used to restore discipline because [Plaintiff] refused to comply with a valid order." *Taylor v. Johnson,* 2021 WL 4989997, at *1 (N.D. Ind. Oct. 27, 2021). *See also Jackson,* 808 F. App'x at 382 (finding no excessive force where the tactical team used "two short bursts of pepper spray on [the plaintiff] only after he disobeyed three direct orders"); *Carr v. Beth,* 465 F. App'x 567, 571 (7th Cir. 2012) (finding no excessive force when a plaintiff refused to relinquish a pen and open his cell door and then was prayed with pepper spray). Thus, the Court cannot plausibly infer that Sadler's actions were unnecessary and excessive.

Because Plaintiff has failed to state a viable claim against Sadler, the First Amended Complaint does not survive preliminary review and is dismissed. Though leave to amend is given freely in *pro se* cases, the Court is not required to grant leave to amend if an amendment would be futile. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (a district court may deny leave to amend where an amendment would be futile). Plaintiff has already been given an opportunity to file an amended complaint and again fails to state a claim for excessive force. The Court therefore finds that further amendment of Plaintiff's claims in this action would be futile. Accordingly, the dismissal of this case is with prejudice and without leave to further amend.

### DISPOSITION

For the reasons set forth above, the First Amended Complaint (Doc. 13) is **DISMISSED with prejudice** for failure to state a claim for relief. The Court counts the dismissal of this action as one of Plaintiff's three "strikes" within the meaning of 28 U.S.C. § 1915(g).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll (suspend) the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. If the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."

A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger,* 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F. 3d 464, 467 (7th Cir. 1998).

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 31, 2024**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**